UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN,<br><br>        Plaintiff,<br><br>v.<br><br>BBQ HOLDINGS, INC., JEFFERY CRIVELLO, CHARLES DAVIDSON, PETER HAEG, RACHAEL MAGA, and BRYAN L. WOLFF,<br><br>        Defendants. | Case No. 1:22-cv-7206<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against BBQ Holdings, Inc. ("BBQ or the "Company") and the members BBQ board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of BBQ by affiliates of MTY Food Group, Inc. ("MTY").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on August 24, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed

transaction whereby Grill Merger, Inc. ("Merger Sub"), a wholly owned subsidiary of MTY Franchising USA, Inc. ("Parent"), will merge with and into BBQ, with BBQ continuing as the surviving corporation and as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 8, 2022 (the "Merger Agreement"), each BBQ common share issued and outstanding will be converted into the right to receive $17.25 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of BBQ's outstanding common stock and will expire on September 21, 2022 (the "Tender Offer"). Merger Sub and Parent are each affiliated with MTY.

3. Defendants have now asked BBQ's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) BBQ's financial projections relied upon by the Company's financial advisor, Kroll, LLC, operating through its Duff & Phelps Opinions Practice ("Kroll"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Kroll. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as BBQ stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BBQ's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company stock is traded on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of BBQ common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jeffery Crivello has served as a member of the Board since August 2017 and is the Chief Executive Officer of the Company.

11. Individual Defendant Charles Davidson has served as a member of the Board since June 2020.

12. Individual Defendant Peter Haeg has served as a member of the Board since November 2017.

13. Individual Defendant Rachael Maga has served as a member of the Board since July 2018.

14. Individual Defendant Bryan L. Wolff has served as a member of the Board since July 2015.

15. Defendant BBQ is a Minnesota corporation and maintains its principal offices at 12701 Whitewater Drive, Suite 100, Minnetonka, Minnesota 55343. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "BBQ."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

18. BBQ develops, owns, operates, and franchises casual and fast dining restaurants under the Famous Dave's, Village Inn, Clark Crew BBQ, Granite City, Tahoe Joe's Steakhouse, Bakers Square, and Real Urban Barbecue names in the United States, Canada, and the United Arab Emirates. It offers smoked, barbequed, and grilled meats, as well as entrée items, and side dishes and appetizers. The company operates full-service and counter-service restaurants. As of March 14, 2022, it had 100 company owned locations and approximately 200 franchised locations, including ghost kitchens operating out of the kitchen of another restaurant location or shared kitchen space. BBQ was incorporated in 1994 and is based in Minnetonka, Minnesota.

19. On August 9, 2022, the Company announced the Proposed Transaction:

Montreal, Aug. 09, 2022 (GLOBE NEWSWIRE) -- **MONTREAL, August 9th, 2022** - MTY Food Group Inc. ("MTY" or the "Company") (TSX:MTY) and BBQ Holdings, Inc. ("BBQ Holdings") (NASDAQ:BBQ) today announced they have entered into a definitive merger agreement (the "Merger Agreement") under which MTY would acquire all of the issued and outstanding common shares of BBQ Holdings for cash consideration of US$17.25 per BBQ Holdings share representing total transaction value of approximately US$200 million (C$257 million) (the "Transaction"), including BBQ Holdings' net debt. The terms and conditions of the Merger Agreement were unanimously approved by the Boards of Directors of both companies. The Transaction is subject to customary closing conditions including receipt of applicable regulatory approvals. Upon completion of the Transaction, BBQ Holdings will become a subsidiary of MTY and the shares of BBQ Holdings will be de-listed from NASDAQ.

BBQ Holdings is a franchisor and operator of casual and fast casual dining restaurants across 37 states in the U.S., Canada, and United Arab Emirates. Its flagship restaurant brands operate under the "Famous Dave's", "Village Inn", "Barrio Queen", and "Granite City", banners. As of August 9, 2022, BBQ Holdings operates over 200 franchised and over 100 corporate-owned restaurants. For the 2022 fiscal year ending January 1, 2023, and as publicly disclosed by BBQ Holdings, the company is expected to generate twelve-month run-rate system sales and cash EBITDA between US$685M to US$725M and US$25.5M and US$27.5M, respectively.

MTY is a leading franchisor in the North American restaurant industry. As of May 31, 2022, its network had 6,660 locations in operation, 99% of which are franchised. The Company established its presence in the U.S. with the acquisition of Kahala Brands in July 2016 and has since continued to grow its footprint in the country through new restaurant openings and acquisitions. With this Transaction, MTY will add leading restaurant brands to its network which will reach a total of approximately 7,000 locations, including over 3,900 in the United States.

"This transaction represents another key acquisition for MTY as we further scale and enhance our existing U.S. portfolio through the addition of nine unique brands. The transaction combines highly complementary businesses, including BBQ Holdings' exciting casual and fast casual brands. BBQ Holdings' restaurants are well established within each of their respective markets with a strong network of franchise partners, well-run corporate owned locations, and a best-in-class management team. We are excited about the

prospects of adding BBQ Holdings' brands to the MTY family and we look forward to welcoming Jeff Crivello and his team and their franchise partners," commented Eric Lefebvre, Chief Executive Officer of MTY.

Jeff Crivello, Chief Executive Officer of BBQ Holdings, commented "We are thrilled to partner with MTY and its talented team of restaurant operators. Over the past four years we have significantly grown revenue and our restaurant portfolio while building a world-class team of entrepreneurs. We look forward to continuing the execution of our three pillars of growth, which we believe align very closely with MTY's vision. With more than 80 brands, MTY brings vast buying power and a team of industry leaders who will provide additional support to our franchise partners. As our founder Dave Anderson says, we strive to deliver famous experiences with our 'yes is the answer, what's the question' hospitality."

**Transaction Highlights**

- Adds well-established quality brands to MTY's portfolio of restaurants
  - 9 new restaurant brands adding to MTY's portfolio
  - System sales expected to exceed C$4.8B in aggregate following the Transaction based on BBQ Holdings projected sales representing an increase of 23% compared to MTY's current levels
- Further expands MTY's geographic footprint in the United States
  - Broadens MTY's U.S. footprint with over 3,900 locations in the country, representing an increase of 9% in locations
  - MTY's system sales from the U.S. expected to increase from 58% to 66% of total system sales post Transaction
- Diversifies MTY's restaurant concepts with greater exposure to casual dining and fast casual dining concepts
  - Casual dining and fast casual dining concepts expected to increase from 29% of current MTY system sales to 43% of MTY's total pro forma system sales at transaction close
  - BBQ Holdings' brands bring a complementary restaurant concept mix while reducing the level of seasonality of the business
- Highly talented management and employee base

- - Seasoned management team with a strong operational track record and history of successful M&A
  - Supported by a well-established organizational structure and experienced employee base
- Expected to be immediately accretive to MTY's free cash flow per share
  - The Transaction represents a 7.5x multiple of BBQ Holdings' mid-point FY2022E run-rate cash EBITDA guidance of US$26.5M

**Transaction Financing**

The Transaction is not subject to any financing condition and the consideration will be 100% funded in cash. MTY will use its cash on hand and its existing credit facility to fund the cash consideration and to repay BBQ Holding's net debt outstanding as of the close of the Transaction.

MTY's pro forma Net Debt / EBITDA (excluding leases) expected to stand at approximately 2.4x upon closing, which remains within a comfortable zone offering good flexibility should more opportunities surface in the near future.

**Transaction Details**

Under the terms of the Merger Agreement, a subsidiary of MTY will commence a tender offer to purchase all of the outstanding shares of BBQ Holdings common stock for US$17.25 per share in cash. The tender offer is subject to customary conditions, including antitrust clearance and the tender of a majority of the outstanding shares of BBQ Holdings common stock. Following successful completion of the tender offer, MTY would acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

The Transaction is expected to close by Q4, 2022. There is no assurance the Transaction will be completed as described above or at all, or that the anticipated closing date will materialize. Following the close of the Transaction, the shares of BBQ Holdings will be de-listed from NASDAQ, BBQ Holdings will become a privately held subsidiary of MTY, and its restaurants will continue to be operated as independent brands.

**Transaction Approvals & Support**

> The Transaction has been unanimously approved by the board of directors of MTY and has the unanimous support of the BBQ Holdings board of directors. Certain key shareholders of BBQ Holdings have signed support agreements in favor of the Merger Agreement, representing in aggregate approximately 37% of the shares currently outstanding. The consummation of the Transaction is conditioned upon, among other things, the tender of at least 50% of BBQ Holdings fully-diluted shares of common stock and receipt of applicable regulatory approvals.
>
> **Financial and Legal Advisors**
>
> National Bank Financial Inc. is acting as sole financial advisor to MTY and Morrison & Foerster LLP is acting as its legal advisor. Kroll, LLC is acting as financial advisor to BBQ Holdings and Dentons Sirote PC and Lathrop GPM LLP are acting as its legal advisors.

\* \* \*

20. It is therefore imperative that BBQ's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.    The Materially Incomplete and Misleading Solicitation Statement**

21. On August 24, 2022, BBQ filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

22.     The Solicitation Statement fails to disclose the financial projections by BBQ management and relied upon by Kroll in its analyses. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Kroll with forming a view about the stand-alone valuation of the Company.  Kroll, in connection with its Fairness Opinion, reviewed "[o]ther internal documents relating to the history, current operations, and probable future outlook of the Company, including run-rate EBITDA and financial projections for the fiscal year ending January 1, 2023, provided to [Kroll] by Company management." Solicitation Statement at A-1. Accordingly, the Solicitation Statement should have, but fails to provide, the projections that BBQ management provided to the Board and Kroll. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide the Company Projections in their entirety to make the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Kroll's Financial Analysis*

24.     With respect to Kroll's *Selected Publicly Traded Companies Analysis*, the Solicitation Statement fails to disclose the financial metrics for each selected company observed in the analysis.

25. With respect to Kroll's *Selected Transactions Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each selected transaction observed in the analysis.

26. The Solicitation Statement also fails to explain why the Company does not prepare financial forecasts to enable Kroll to conduct a discounted cash flow analysis.

27. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

28. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

29. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

30. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or

recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

31.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

32.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

33.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

34.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

35. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

36. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

37. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

38. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

39. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

40. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of BBQ within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of BBQ, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of BBQ, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of BBQ, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

46. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

  A.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  B.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

  Plaintiff demands a trial by jury.

DATED: August 24, 2022       **MELWANI & CHAN LLP**

                /s *Gloria Kui Melwani*
                Gloria Kui Melwani (GM5661)
                1180 Avenue of the Americas, 8th Floor
                New York, New York 10036
                Tel: (212) 382-4620
                Email:  gloria@melwanichan.com

                *Attorneys for Plaintiff*